UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY L. SIMMONS,

      Plaintiff,

v.                                 Case No. 1:11-cv-756
                                 Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

      Plaintiff was born on February 26, 1965 (AR 127).[2]  He completed the 12th grade (AR 138).  Plaintiff alleged a disability onset date of August 27, 2005 (AR 132).  He had previous employment as a cable technician, garage owner/operator and mechanic (AR 133).  Plaintiff identified his disabling conditions as "bulge in spine, fracture, nerve damage in left leg, lower back problems, bad thyroid, depression" (AR 132).  Plaintiff traces his back injury to an automobile accident on August 27, 2005 (AR 132).  Plaintiff states that his conditions limit his ability to work because he has difficulty moving, has to use a cane, and has lifting and bending limitations (AR 132).

      On May 18, 2010, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and

_____

      [1] The court notes that while plaintiff's first name in the case caption appears as "Gregory," it appears as "Gregery" in the administrative record filed by defendant in this action.

      [2] Citations to the administrative record will be referenced as (AR "page #").

entered a decision denying benefits (AR 8-19).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 27, 2005 through his date last insured of December 31, 2008 (AR 10).  At step two, the ALJ found that through the date last insured, plaintiff suffered from severe impairments as follows: degenerative disc disease of the lumbar spine; hypothyroidism; obesity; a bipolar disorder; and depression (AR 10).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.04 (disorders of the spine), 9.02 (thyroid disorders) and 12.04 (affective disorders) (AR 10-12).

The ALJ decided at the fourth step that through the date last insured, plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following restrictions:

> The claimant, however, required a sit/stand option, at will.  He could only occasionally crawl, crouch, kneel, stoop, balance, and climb ramps and stairs.  The claimant was precluded from climbing ropes, ladders, and scaffolds; and from working around hazards such as unprotected heights or dangerous moving machines. He could only occasionally operate foot control [sic] with the non-dominant lower extremity.  The claimant was also limited to performing unskilled, simple, repetitive tasks and to jobs requiring only occasional contact with co-workers and supervisors, and no interpersonal contact with the general public.  Additionally, the claimant is restricted to low stress jobs (defined as only occasional adaption to changes in the work place).

(AR 12-17).  The ALJ further found that plaintiff could not perform his past relevant work (AR 17-18).

At the fifth step, the ALJ determined that plaintiff could perform a significant number unskilled, sedentary jobs in the national economy (AR 18-19).  The ALJ went on to find that plaintiff

4

could perform the following jobs in the regional and national economies: video surveillance monitor (2,000 and 82,000 jobs respectively); visual inspector (2,200 and 110,000 jobs respectively); and order checker (5,200 and 190,000 jobs respectively) (AR 18-19).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 27, 2005 (the alleged onset date) through December 31, 2008 (the date last insured) (AR 19).

### III.  ANALYSIS

Plaintiff has raised two issues (with subparts) on appeal.

### A.    The ALJ gave no valid reasons to reject plaintiff's reported symptoms and limitations.

Plaintiff contends that the ALJ improperly discounted his credibility with respect to his reported symptoms and limitations.  An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).    The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007).  Nevertheless, an ALJ's credibility determinations

5

regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

### 1.      Medical record

The ALJ's review of the medical record is set forth on five pages of the decision (AR 13-17).   The court will not restate this entire discussion, but address only those concerns raised by plaintiff.

### a.      The ALJ's inaccurate statement regarding treatment

Plaintiff contends that the ALJ made an incorrect statement that "The record contains no evidence of any treatment from February 19, 1993 to March 2007."  Plaintiff's Brief at p. 8 (emphasis in original).[3] This statement was made at the outset of the ALJ's review of the medical evidence and should be read in context:

> In filing the application for Social Security benefits, the claimant alleged limitations in his ability to work due to a lower back problems [sic], a bulge in his spine, nerve damage in his left leg, a bad thyroid and depression (Exhibit 2E, page 2).  During the hearing, the claimant also testified that he injured his back in an automobile accident, and continues to experience lower back pain which radiates into his left leg.  Indicating that he is unable to work because he is in pain all of the time, the claimant testified that he is able to lift no more than 10 to 20 pounds up to waist level, sit for only 20 minutes to an hour, stand for no longer than 20 to 40 minutes, and walk with a cane for only 2 or 3 blocks.  Additionally, the claimant testified that he is being treated for bipolar disorder.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

---

[3] Defendant does not address this issue.

Specifically, it is noted that <u>while the claimant has alleged disabling symptoms since August 2005, the record contains no evidence of any treatment during the period from February 19, 1993, to March 2007</u>.

The medical record also fails to document any neurological deficits, significant orthopedic abnormalities, or serious dysfunction of bodily organs, which would have precluded the performance of all work-related activities.

(AR 13-14) (emphasis in original).

Plaintiff correctly notes that the ALJ erred in stating that there was no evidence of treatment from February 19, 1993 through March 2007. In this regard, Dannie Tabor, D.O., testified at a deposition that he saw plaintiff during this time period, specifically on August 30, 2005, three days after plaintiff was involved in an auto collision (AR 360). The doctor also testified that at about the same time, plaintiff had "a lot of x rays" dealing with lumbar problems (AR 361). Given that Dr. Tabor's statement appears in a deposition taken on June 2, 2009 (nearly four years after plaintiff's collision) (AR 354) and the absence of supporting medical records from Dr. Tabor's office, the court cannot fault the ALJ for failing to pick out this passing remark regarding this particular  medical treatment in 2005.

There are other records of treatment. After reviewing the administrative record, the court has noted a medical record that appears between February 19, 1993 and March 2007. This record consists of an outpatient physical therapy discharge summary from Hackley Hospital dated January 20, 2006, which notes that plaintiff was seen for 16 visits between September 29, 2005 and November 8, 2005 (AR 216). In addition, there are two medical records which indicate prior medical treatment in 2005: an x-ray report from March 2007 references an earlier x-ray from August 27, 2005, with the later x-ray showing "Mild progression of degenerative disc changes with spondylosis at the L2-3 level" (AR 220, 303); and,  a chest x-ray report from 2008 references an

earlier an x-ray from August 27, 2005, with the later x-ray showing "no significant interval change" and "[n]o acute intrathoracic abnormality" (AR 304).

While the ALJ's statement was in error, the error appears harmless.  Dr. Tabor's testimony regarding plaintiff's condition in August 2005 was vague and not supported by documentation in the record; the physical therapy record simply noted plaintiff's discharge from therapy; and the x-rays from 2007 and 2008 merely referenced plaintiff's condition in 2005 as a baseline.   Plaintiff failed to produce the supporting medical records from 2005 that would have aided the ALJ in reaching a decision.  Given the administrative record in this case, the ALJ could conclude that the objective medical record indicated that plaintiff suffered from only minimal and sporadic medical problems prior to March 2007.  The lack of medical evidence prior to March 2007 provides substantial evidence to support the ALJ's determination that plaintiff's claim of disabling limitations prior to March 2007is not credible.   "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).  "When 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, 114 Fed. Appx. 171, 173 (6th Cir. 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).

**b.      The ALJ imposed an unauthorized corroboration requirement**

Plaintiff contends that his symptoms need not be corroborated by both medical findings and treatment.  Plaintiff's Brief at p. 9.[4]  Plaintiff contends that the "pain regulations" [20

_____

[4] The court notes that defendant did not address this argument.

U.S.C. § 404.1529(c)(2) and § 416.929(c)(2)] create only one corroboration requirement, i.e., that "the claimant must have an underlying condition capable of producing reported symptoms." *Id.* Plaintiff states (without reference to the administrative record) that the ALJ "denied" his reported symptoms and limitations because they "were not corroborated by medical findings [] and treatment," and that the ALJ's determination "amounts to imposing an unauthorized corroboration requirement." *Id.* While plaintiff refers to an ALJ's finding that "satisfied the only corroboration requirement authorized by the pain regulation," he does not identify that particular finding. *Id.* at pp. 9-10. Plaintiff then contends that the ALJ's "denial that the medical *findings* are severe enough to explain Plaintiff's reported symptoms and limitations crosses the line into doctor-playing by the ALJ." *Id.* at p. 10 (emphasis in original).

Plaintiff's claims are without merit. When evaluating a claimant's statements of subjective pain, the ALJ is required to determine the actual intensity and persistence of the claimant's symptoms and how these symptoms limit the claimant's ability to work. *Allen v. Commissioner of Social Security*, 561 F.3d 646, 652 (6th Cir. 2009), citing § 404.1529(b) ("The finding that your impairment(s) could reasonably be expected to produce your pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of your symptoms") and 20 C.F.R. § 404.1529(c) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work.").

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.* In reviewing plaintiff's claim, it is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).

Here, the ALJ found that plaintiff met the first prong of the *Duncan* test, when he found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine; hypothyroidism; obesity; a bipolar disorder; and depression (AR 10). However, plaintiff's claim

failed on the second prong of the *Duncan* test. While the ALJ initially found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (AR 13), the ALJ found no confirmation that plaintiff's symptoms were so severe as to be disabling. The ALJ noted the lack of evidence of treatment prior to March 2007, *see* discussion, *supra*, and that "[t]he medical record also fails to document any neurological deficits, significant orthopedic abnormalities, or serious dysfunction of bodily organs, which would have precluded the performance of all work-related activities" (AR 13-14). Accordingly, the ALJ did not commit error in evaluating plaintiff's symptoms.

      **c.    The ALJ was "playing doctor"**

Plaintiff contends that the ALJ made improper independent medical judgments related to the orthopedic findings and psychological symptoms. Plaintiff's Brief at p. 10. The court disagrees.

It is the function of the Commissioner to resolve conflicts in the medical evidence. *See King*, 742 F.2d at 974. In performing this function, however, an ALJ may not substitute his medical judgment for that of plaintiff's physicians. *See Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir.2006) ("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

11

### i.    Orthopedic evidence

The ALJ found that "[t]he medical record also fails to document any neurological deficits, significant orthopedic abnormalities, or serious dysfunction of bodily organs, which would have precluded the performance of all work-related activities" (AR 14).  In reaching this conclusion, the ALJ relied on the treatment records of Harrison Johnson, M.D. (treated plaintiff's lower back) (AR 179-83, 185, ), Christopher Marquart, M.D., F.A.C.S. (opined that plaintiff did not require surgical intervention) (AR 208, 223), Jeffrey Sears, D.O. (noted that plaintiff had no loss of motion of the lumbar spine and did not appear to be in any significant pain) (AR 182), and Anthony Wilson, M.D. (while plaintiff had tenderness over the lower lumbar paraspinal muscles, the doctor found no evidence of obvious muscle spasms or trigger points) (AR 350-52).  The ALJ noted that upon examination by Dr. Tabor in August 2009 (approximately eight months after plaintiff's last insured date), plaintiff had spasm of the muscles of the lumbar spine with only mildly reduced range of motion (AR 14-15, 383).

After reviewing the history of plaintiff's treatment, the ALJ found that "[t]he medical record, as discussed above, fails to support the claimant's allegations of ongoing and disabling symptoms" (AR 15).  This record reflects that the ALJ did not engage in independent medical judgment but made a credibility determination based on the objective evidence in the medical record.   Accordingly, plaintiff's claim of error should be denied.

### ii.    Psychological symptoms

The ALJ noted that there was no evidence that plaintiff was hospitalized secondary to a mental and/or emotional condition or treated by a mental health professional (AR 15).  The only records regarding plaintiff's psychological symptoms generated before his last insured date were

treatment notes beginning in May 2008, which reflect, among other things, plaintiff's complaints of anxiousness, depression, fearful thoughts, crying spells, panic attacks and thoughts of suicide and death (AR 15). The ALJ observed: that plaintiff underwent a medication change on May 23, 2008; that plaintiff reported feeling better on May 28, 2008; and that by June 2008, plaintiff reported that he was doing well and did not need further treatment (AR 15). The ALJ also noted that in June 2009 (approximately six months after the last insured date), Dr. Tabor reported that plaintiff had improved with respect to his depression disorder and was to continue prescribed medications (AR 15). The ALJ found that "[t]he medical record, as discussed above, fails to support the claimant's allegations of ongoing and disabling symptoms" (AR 15). This record reflects that the ALJ did not engage in independent medical judgment but made a credibility determination based on the objective evidence in the medical record. Accordingly, plaintiff's claim of error should be denied.

### d. Plaintiff's activities of daily living (ADLs)

Plaintiff contests the ALJ's determination that his ADLs are inconsistent with a claim of disability. The ALJ addressed plaintiff's ADLs as follows:

> The claimant also described activities which are not limited to extent [sic] one would expect, given the complaints of disabling symptoms and limitations. Specifically, in filing the application for Social Security benefits, the claimant completed a Function Report indicating that he took care of his personal needs with difficulty dressing and washing his lower extremities. The claimant also reported that he took care of pets, prepared simple food on a daily basis, drove, and performed household chores such as making the bed, and loading the washer and dryer (Exhibit 4E, pages 1 through 4). The claimant's wife also completed a Third Party Function Report indicating that the claimant prepared simple meals and performed household chores (Exhibit 3E).

(AR 15).

While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See,*

*e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

Furthermore, the ALJ observed that the ADL's were only one factor weighed in the credibility determination:

> The undersigned is cognizant, however, than an individual's daily activities are only one factor taken into consideration in reaching a conclusion regarding credibility. Other factors include the objective evidence and opinions, clinical and laboratory findings, the extent of medical treatment and relief from medication and therapy, the claimant's work history, attempts to seek relief from symptoms, and the extent, frequency, and duration of symptoms. Taking all of these factors into consideration, the undersigned finds the claimant's allegations of an inability to perform all work-related activities to be unsupported.

(AR 16). Based on the entire record of this case, the court concludes that the ALJ's credibility determination was supported by substantial evidence. There is no compelling reason for the court to disturb that determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error should be denied.

### B.    The ALJ violated the treating physician rule.

Plaintiff contends that the ALJ improperly rejected the opinions of his treating physician, Dr. Tabor. A treating physician's medical opinions and diagnoses are entitled to great

weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters*, 127 F.3d at 529-30.  The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Id.* at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).  An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen*, 964 F.2d at 528.  In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287; 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff summarized the three opinions offered by Dr. Tabor which the ALJ allegedly failed to give proper weight: the doctor's opinions expressed in October 2007 that plaintiff could not handle his previous lineman work, but that plaintiff was "capable of getting around and attending to his daily needs with the ability to change positions regularly and without having to do heavy work or significant twisting or pulling or pushing on a regular basis" (AR 226); the doctor's letter from April 2008 that plaintiff "has been severely restricted in his activities and his capabilities of working

. . . severely limited in both his physical capabilities and his ability to sit and/or stand in any one place for a prolonged period of time" (AR 310); and the doctor's opinions expressed in his June 2, 2009 deposition that "[p]laintiff could not do his previous work . . . nor any other," and that plaintiff "has not improved since April 2008" (AR 362-63). Plaintiff's Brief at pp. 3-5.

Plaintiff's first reference is to a letter dated October 20, 2007, in which Dr. Tabor stated that plaintiff could not perform "heavy work" but could work with restrictions:

> This is concerning Greg Simmons' ability to return to his normal work, which according to my understanding consists of being a cable person including climbing ladders, carrying ladders and equipment with him, digging and burying cables, etc. At this time, the patient continues to suffer from back and neck problems which would prohibit him from doing such heavy work.  Greg is capable of getting around and attending to his daily needs with the ability to change positions regularly and without having to do heavy work or significant twisting or pulling or pushing on a regular basis.

(AR 226).

Plaintiff's next reference is to a letter dated April 14, 2008, in which Dr. Tabor noted that plaintiff was physical and non-exertional limitations, stating in pertinent part as follows:

> I have been asked to write a letter concerning Gregery Simmons' disability. This is a 43-year-old male whom I have been taking care of for the last 20 years or thereabouts.  The patient is quite well-known to me.  He had normally been in fairly good health until the last few years, during which he has been severely restricted in his activities and his capability of working.
>
> The patient was in an auto accident, and I reviewed his vocational evaluation reports and his orthopedic rehabilitation evaluation.  These seem consistent with Gregery's ability to work at this time.  I think he is severely limited in both his physical capabilities and his ability to sit and/or stay in any one place for a prolonged period of time.  It does not appear that things are improving [sic] over the last year or so.  I do not see that there is going to be any significant improvement over the next year or so, either, with his present situation.

(AR 310).

Plaintiff's summary of Dr. Tabor's June 2009 testimony is not entirely accurate.  At his deposition, Dr. Tabor opined that, in his opinion, plaintiff could not "return to the type of physical work he did in the cable industry" because:

> Well, anytime he tries to do anything, he ends up with more pain and is laid up for several days with more aching, not getting around, issues with the pain, doesn't do particularly well with pain medications, gets ornery or gets ornery because of the pain.  You know, it hasn't been -- hasn't been good, you know, but I don't think he can do it.

(AR 362-63).  Contrary to plaintiff's summary, Dr. Tabor did not state that plaintiff could not do "any other" work (AR 363).  Rather, plaintiff's counsel elicited the following testimony from the doctor:

> Q.   You have the benefit that none of the rest of us have.  You've known Greg Simmons for some 20 years.  What can you say about him that would help us understand what's going on in his life now?
>
> A.   Well, Greg is a hyperactive, ADD person who needs to be doing stuff.  And I think that he really would much prefer working than to be disabled and this is really a very stressful situation for him.  He doesn't like it.  He would much rather be working and he can't do it.  Every time he tries to do it, things quite [sic] down, he rests, and then he tries to do something and it flare [sic] up to the point where he can't hardly get around, and he uses a cane, and it's just -- you know, very frustrating for him and, therefore, it's some stress for family, I think, and -- and it's not a pleasant situation for him, by any means.
>
> Q.   In your view, does he have a legitimate medical basis for his low back pain?
>
> A.   Yes.

(AR 363).

The ALJ provided the following evaluation of Dr. Tabor's opinions:

> The undersigned is also aware that in a deposition taken on June 2, 2009, Danny Tabor, D.O. indicated that the claimant was "disabled" (Exhibit 15F, page 11).  The undersigned, however, has afforded little weight to Dr. Tabor's opinion as

17

the doctor failed to provide any objective findings to support his conclusion (Exhibit 15F, page 11).  A review of the doctor's treatment record also failed to provide any objective findings to support a conclusion of disability (Exhibit 10F, pages 4, 5, 7 and 11; and Exhibit 17F, page 6).  Moreover, the doctor's statement regarding the claimant being "disabled" is inconsistent with his prior statements regarding the claimant's functioning.  Specifically, in a report completed in October 2007, Dr. Tabor noted that the claimant suffered from back and neck problems which would prohibit him from doing heavy work.  The doctor noted, however, that the claimant was able to get around and attend to his daily need with the ability to change positions regularly and without having to do heavy work, significant twisting or pulling/pushing on a regular basis (Exhibit 5F).  Dr. Tabor subsequently indicated in an April 2008 report that the claimant was limited in his ability to perform physical activities, as well as his ability to sit and/or stay in anyone place for a prolonged period of time (Exhibit 9F).  Given these inconsistencies, Dr. Tabor's statement regarding the claimant being "disabled" is afforded little weight.  Greater weight has instead been afforded to the assessment of the Medical Expert of record, Dr. Lyons.  His conclusion that the claimant retains the ability to perform sedentary level work is consistent with the level of documented level of [sic] vertebrogenic deterioration as well as the largely conservative level of treatment the claimant has received to date for his orthopedic complaints.  Additional restrictions affording the claimant a sit/stand option with appropriate postural limitations have also been included to further accommodate the claimant's complaints of difficulty remaining on his feet for extended periods of time and a limited range of spinal motion.

(AR 16).

Dr. Tabor's testimony regarding plaintiff's condition at the time of the June 2, 2009 deposition was minimally probative (if not irrelevant) to plaintiff's DIB claim, because the opinion reflected plaintiff's condition more than five months after his last insured date.  "[I]nsured status is a requirement for an award of disability insurance benefits."  *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984).  Since plaintiff's insured status for purposes of receiving DIB expired on December 31, 2008, he cannot be found disabled unless he can establish that a disability existed on or before that date.  *Id.*  "Evidence relating to a later time period is only minimally probative."  *Jones v. Commissioner of Social Security*, No. 96-2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), *citing  Siterlet*, 823 F.2d at 920 (where doctor examined the claimant approximately eight months

after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim). Such evidence is only considered to the extent it illuminates a claimant's health before the expiration of his insured status. *Jones*, 1997 WL 413641 at *1; *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

In addition, the ALJ was not bound by Dr. Tabor's testimony that plaintiff was disabled (e.g., that plaintiff could not return "to the type of physical work he did in the cable industry" (AR 362-63)). The legal determination of disability is the prerogative of the Commissioner, not the treating physician. *See King*, 742 F.2d at 973; *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

The court concludes that the ALJ gave good reasons for assigning little weight to Dr. Tabor's opinions (AR 16). The ALJ pointed out that plaintiff's medical records did not provide objective evidence to support a finding that plaintiff suffered from disabling conditions that precluded sedentary work (AR 16, 314-15, 317, 321, 383). These records reflect that in May 2008, plaintiff appeared anxious, with mood swings and lack of concentration, but was doing better by the end of the month, being only in mild distress (AR 314-15, 317) . By June 2008, plaintiff's emotional situation was better controlled, but he continued to have back pain and used a cane (AR 321). By August 2009 (eight months after his last insured date), plaintiff reported that he felt "much better" emotionally and had only mildly reduced range of motion due to lumbar back muscle spasm (AR 383).

Moreover, the ALJ did not reject all of Dr. Tabor's opinions. For example, Dr. Tabor opined that plaintiff was severely limited in both his physical capabilities (i.e., performing heavy work) and his ability to sit and/or stay in any one place for a prolonged period of time (AR 226,

19

310).   The ALJ accommodated these restrictions by: limiting plaintiff to sedentary work with a sit/stand option (at will); limiting plaintiff to only occasionally crawling, crouching, kneeling, stooping, balancing, and climbing ramps and stairs; precluding plaintiff from climbing ropes, ladders, and scaffolds and from working around hazards such as unprotected heights or dangerous moving machines; and limiting plaintiff to only occasionally operation of foot controls  with the non-dominant lower extremity (AR 12-13, 226, 310).   Accordingly, the ALJ did not commit error in evaluating Dr. Tabor's opinions.

### C.   Plaintiff's claim for relief

Finally, in his claim for relief, plaintiff contends that the ALJ posed an inaccurate hypothetical question to the VE at Step five of the sequential evaluation by failing to include Dr Tabor's restrictions of no regular pushing or pulling and no significant twisting.  Plaintiff's Brief at pp. 16-17.  This claim, which is not included in the statement of errors, involves issues of law and fact related to the ALJ's formulation of the hypothetical questions posed to the VE (AR 54-57).  However, plaintiff does not address the legal or factual basis for this claim in any detail.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.  *Little v. Cox's Supermarkets*,  71 F.3d 637, 641 (7th Cir. 1995).  Accordingly, the court deems this argument waived.

## IV.     Recommendation

Accordingly, I respectfully recommend that the Commissioner's decision be

**AFFIRMED**.


Dated:  June 15, 2012                              /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).